GOTHARD, Judge.
This is a suit by an employee, Cornell Joseph, for benefits due under the Worker’s Compensation Act as a result of injuries sustained while working as a stock clerk at the National Food Store in Donald-sonville. The trial court cast defendant, National Tea Company, in judgment for payment of $630.00 in nursing bills but dismissed plaintiffs claim for further worker’s compensation benefits, attorney’s fees, penalties and interest. Plaintiff appeals from that judgment asserting that defendant was arbitrary and capricious in paying claims untimely and that scheduled benefits for disfigurement were due. We affirm.
The facts of the accident which occurred on August 7, 1987, are not in dispute. As part of his job, plaintiff was unloading a truck at the rear of the store when his left hand became jammed between the lift and the truck. As a result of the accident, plaintiff underwent amputation of the crushed ends of three fingers of his left hand. He lost the first phalange of the index finger, the first and most of the second phalange of the middle finger, and the first phalange of the ring finger.
Plaintiff was taken to Prevost Memorial Hospital in Donaldsonville, where he was given an injection for pain and transferred by ambulance to Our Lady of the Lake Hospital in Baton Rouge for amputation surgery. During his period of recovery at home, plaintiff utilized the services of Anthony Crayton, a licensed practical nurse, for bathing and dressing the wounds. The healing process continued successfully and plaintiff was able to return to light work on October 28, 1987 and regular work duty on November 18, 1987. Plaintiff filed this action on May 13, 1988 seeking additional worker’s compensation benefits, penalties and attorney’s fees.
On appeal plaintiff asserts that the trial court erred in failing to award statutory penalties and attorney’s fees and in failing to award disfigurement benefits as the more favorable remedy under the worker’s compensation law.
As previously stated the accident occurred on August 7, 1987. Plaintiff was released to return to work on November 18, 1987. Defendant paid compensation in the amount of $107.58 per week until plaintiff returned to work for a total in compensation benefits of $1629.06. Additionally, on December 20, 1988 defendant paid a lump sum of $4610.58 for amputation benefits pursuant to LSA-R.S. 23:1221(4). Two ambulance bills, one for transportation between the two hospitals on the day of the accident and a second bill dated August 9, 1987 for transportation from claimant’s home to the hospital, were paid in October, 1988. Bills for nursing services rendered by Anthony Crayton remained unpaid at the time of trial.
Plaintiff argues that penalties and attorney’s fees should have been awarded for defendant’s alleged recalcitrance in paying scheduled lump sum benefits, ambulance bills and nursing bills. He does not assert that weekly compensation benefits were inadequate or untimely.
LSA-R.S. 23:1201.2[1] provides sanctions for failure to make timely payments of worker’s compensation benefits when such failure is found to be “arbitrary, capricious, *461 or without probable cause.” The penalty portion applies to untimely payment of medical expenses as well as compensation benefits. Savoy v. McDermott, Inc., 520 So.2d 888 (La.App. 3rd Cir.1987). When benefits are not paid within the time period prescribed by R.S. 23:1201.2, arbitrary and capricious conduct is presumed, unless precluded by an employer’s good faith defense. Savoy, supra.
In the instant matter it is clear that defendant knew shortly after the August 7, 1987 accident that amputation occurred, but did not pay scheduled benefits until December 20, 1988. In order to compute compensation due for partial amputation or loss of use of fingers a percentage of loss or impairment must be established. LSA-R.S. 23:1221(4)(o). The record contains two letters from defendant, one dated March 23,1988 and one dated May 18, 1988 to claimant’s attending physician, Dr. Y.J. Zeringue, requesting the required disability rating. Testimony at trial revealed that those letters were unanswered by Dr. Ze-ringue. There is also a recommendation from the Department of Labor dated April 8, 1988 which contains the finding that a claim for disfigurement was premature since there was no medical evidence assessing the percentage of impairment. It was not until defendant took Dr. Zeringue’s deposition on September 19, 1988 pursuant to the lawsuit filed by plaintiff that a disability rating was established. Defendant’s representative, Janet Greer, testified that she received a summary of the deposition in early October. She testified that it was her understanding that verbal negotiations for settlement were underway between the attorneys representing each party. We also note that, although defendant had actual notice of plaintiff’s injury, they did not receive written notice as required by LSA-R.S. 23:1201.2. Under these circumstances we see no manifest error in the trial court’s finding that defendant’s failure to pay scheduled damages within the statutory time limit warrants no imposition of penalties and attorney’s fees.
As to the ambulance and nursing bills, we believe there existed sufficient factual questions to provide defendant with an adequate defense against a charge of arbitrary and capricious conduct. Ms. Greer testified that she received the ambulance bills on February 22, 1988 from plaintiff’s counsel. The record reveals a letter from defendant to plaintiff’s counsel on February 26, 1988 requesting medical support for the bills. Counsel responded on March 4, 1988 indicating that Mr. Falcone of National had authorized the expense. Ms. Greer testified that she could not locate anyone on National’s payroll by the name of Falcone and further received no medical support for the need of the ambulance services nor verification of authorization for the service from National. However, the bills were paid in full in October, 1988.
The nursing bills submitted by claimant were handwritten on standard forms with no explanation as to their purpose. These forms contain only Mr. Joseph’s name, a date and charges of $30.00 per “visit.” Anthony Crayton signed the bills and gives a license number, but no indication of his profession or of the services provided. Additionally, there are bills dated August 5th and 6th, dates that precede the accident. From testimony at trial it is apparent that Mr. Crayton’s services in bathing and redressing plaintiff’s wounds were necessary because plaintiff’s wife could not bear to perform the task. Mr. Crayton testified that the bills dated prior to the accident were incorrectly dated and fully explained the services rendered. Thus, we find no error in the trial court’s ruling that defendant was liable for these bills. However, an employer should not be penalized for seeking judicial resolution of close factual issues. Westley v. Land & Offshore, 533 So.2d 995 (La.App. 1st Cir.1988). The mere fact that defendant was cast in judgment for the nursing bills does not automatically impose penalties and attorney’s fees. Since we find no arbitrary and capricious conduct, we unhold the trial court’s decision denying penalties and attorney’s fees for non-payment of nursing bills.
The last issue for consideration is whether plaintiff is entitled to additional compensation for disfigurement. In his petition plaintiff seeks a determination that he is permanently, totally disabled, or alter *462 natively, permanently partially disabled and disfigured within the meaning of LSA-R.S. 23:1221(4)(p).[2] In brief to this court plaintiff argues that he is entitled to the more favorable of disfigurement or scheduled benefits. Plaintiff seeks one hundred weeks of benefits for disfigurement in lieu of fifty eight weeks paid by defendant. He reasons that his injury should be compensated pursuant to LSA-R.S. 23:1221(4)(p) and not pursuant to LSA-R.S. 23:1221(4)(k) and (4)(o ).[3] We disagree. Section 1221(4)(p) provides a remedy for disfigurement “not falling within any of the provisions made.” Clearly amputation of finger tips fall within other provisions of section 1221(4). Since amputation compensation is specifically provided for in the statute, section 1221(4)(p) expressly excludes compensation for disfigurement. Smith v. Howard Steel Erection, Inc., 534 So.2d 966 (La.App. 4th Cir.1988). The claimant was adequately compensated for his scheduled loss and is not entitled to additional benefits for disfigurement. The trial court’s judgment is affirmed.
AFFIRMED.

. R.S. 23:1201.2 provides:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorneys fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney’s fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due....

. R.S. 23:1221(4)(p) provides:
In cases not falling within any of the provisions already made, where the employee is seriously and permanently disfigured or suffers a permanent hearing loss solely due to a single traumatic accident, or where the usefulness of the physical function of the respiratory system, gastrointestinal system, or genitourinary system, as contained within the thoracic or abdominal cavities, is seriously and permanently impaired, compensation not to exceed sixty-six and two-thirds percent of wages for a period not to exceed one hundred weeks may be awarded. In cases where compensation is so awarded, when the disability is susceptible to percentage determination, compensation shall be established in the proportions set forth in Subparagraph (o ) of this Paragraph. In cases where compensation is so awarded, when the disability is not susceptible to percentage determination, compensation as is reasonable shall be established in proportion to the compensation hereinabove specifically provided in the cases of specific disability.

(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
[[Image here]]
(k) The loss of the first phalanx of the thumb or big toe, or two phalanges of any finger or toe, shall be considered to be equal to the loss of one-half of such member, and the compensation shall be one-half of the amount above specified.
[[Image here]]
(o) In all cases involving a permanent partial anatomical loss of use of amputation of the members mentioned hereinabove, compensation shall bear such proportion to the number of weeks provided for herein for the total loss of such members as the percentage loss or impairment to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.
[[Image here]]